**IT IS SO ORDERED.**

**Dated: 5 February, 2025 11:54 AM**

_____
Suzana Krstevski Koch
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| THOMAS R. BERKLEY, | ) | Case No. 24-12845 |
| | ) | |
|    Debtor. | ) | |
| _____ | ) | Judge Suzana Krstevski Koch |
| | ) | |
| TRENTON SUTTON, | ) | |
| | ) | |
|    Plaintiff, | ) | Adversary Proceeding |
| | ) | No. 24-01072 |
| v. | ) | |
| | ) | |
| THOMAS R. BERKLEY, | ) | |
| | ) | |
| | ) | |
|    Defendant. | ) | |

## MEMORANDUM OF OPINION AND ORDER

This cause is before the Court on Defendant-Thomas R. Berkley's ("Berkley") Motion to Dismiss (the "Motion to Dismiss") (ECF No. 6) Plaintiff-Trenton Sutton's ("Sutton") Complaint (the "Complaint") (ECF No. 1) and Motion in Support of Adversary Complaint (ECF No. 8) (the "Supplement" and together with the Complaint, the "Amended Complaint"). Sutton's Amended Complaint is made pursuant to 11 U.S.C. § 523(a)(2)(A). Berkley's Motion to Dismiss asks the Court to dismiss Sutton's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, require Sutton to provide a more definite statement, pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. For the reasons stated below, Berkley's Rule 12(b)(6) motion to dismiss is granted, and his Rule 12(e) motion for more definite statement is denied as moot.

## JURISDICTION

The Court has jurisdiction over Berkley's underlying Chapter 7 case and this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and Local General Order 2012-07 of the United States District Court for the Northern District of Ohio. Actions to determine dischargeability are core proceedings that this Court may hear and determine under 28 U.S.C. § 157(b)(2)(I). Venue in this Court is proper under 28 U.S.C. § 1409. The following constitutes the Court's findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure, made applicable to this contested matter by Rule 9014 of the Federal Rules of Bankruptcy Procedure. *See e.g.*, *Corzin v. Fordu* (*In re Fordu*), 201 F.3d 693, 710 (6th Cir. 1999).

## BACKGROUND

On October 18, 2024, Sutton filed his Complaint, alleging that Berkley owes him a debt arising out of a business relationship and that the debt should be excepted from Berkely's

Chapter 7 discharge pursuant to 11 U.S.C. § 523(a)(2)(A). ECF No. 1. The Complaint states that Berkley "made representations" to Sutton regarding the purchase of three ATM machines. *Id*. at ¶ 6. Based on those representations, Sutton agreed to pay Berkley $19,000.00 in exchange for the ATM machines and related support services. *Id*. at ¶ 7. Per Sutton's Complaint, Berkley did not honor the agreement in full because only two of the three ATM machines were delivered, and no support services were rendered. *Id*. at ¶ 8. Sutton alleges this outstanding debt owed to him was obtained through "fraud, false pretenses, and false representations" because Berkley "knew or should have known that he did not intend to fulfill the agreement at the time he made these representations to [Sutton]." *Id*. at ¶ 9. Sutton alleges that Berkley owes him a nondischargible debt of $6,333.00 "due to fraud and misrepresentation." *Id*. at ¶¶ 15, 16.

Sutton's Complaint includes three attachments to support his assertions. The first and second attachments ("Exhibit A" and "Exhibit B") are printouts of Gmail eCheck receipts confirming money sent by Sutton to Berkley Marketing Inc. The first, with the description "3 ATM automation package," indicates that Sutton paid Berkley Marketing Inc. $10,000.00 on June 30, 2023. ECF No. 1, Ex. A. The second, with the description "Final Payment," shows Sutton paid Berkley Marketing Inc. $9,000.00 on July 10, 2023. ECF No. 1, Ex. B.

The third attachment, entitled Service Agreement (dated June 27, 2023), outlines services Berkley Marketing, Inc. purportedly promised to render to an unnamed and unknown party. ECF No. 1 Ex. C. According to the Service Agreement, Berkley Marketing Inc. promised to, among other things, find suitable locations for ATMs and negotiate contracts with location owners and deliver ATMs to contracted locations. *Id*. The Service Agreement further established that the unknown party agreed to pay Berkley Marketing, Inc. $29,000.00 for training courses, mentorship, location scouting, and ATM placement services for four ATM locations.

3

24-01072-skk    Doc 12    FILED 02/05/25    ENTERED 02/05/25 14:08:57    Page 3 of 12

*Id*.  Thomas Berkley's signature appears at the bottom of the Service Agreement on behalf of Berkley Marketing Inc.  No other party's name, signature, initials, or identifiers appears anywhere on the Service Agreement.

On November 13, 2024, Sutton filed his Supplement.  ECF No. 8.  The Court construes the Supplement as an Amended Complaint "so as to do justice."  Fed. R. Civ. P. 8(e) (made applicable to this proceeding under Fed. R. Bankr. P. 7008(e)).  Elaborating on the information provided in his Complaint, Sutton claims that Berkley used "the subcontractor/distributor known as "ATMs America" in breaching their agreement.  *Id*. at ¶ 1.  The Supplement reiterates Sutton's primary claims, that (1) Berkley's "failure to deliver the third ATM machine and the full scope of service indicates a clear misrepresentation of intent to fulfill the agreement fully"; (2) Sutton relied on those representations; and (3) Sutton has suffered a financial loss of $6,333.33 as a "direct result of [Berkley's] fraudulent conduct in failing to honor the agreement."  *Id*.  at ¶¶ 4–6.

As evidence of fraud and misrepresentation, Sutton points to the three exhibits included with his Complaint and reiterated that Berkley only delivered two of the three promised ATM machines.  *Id*. ¶ 2.

On November 18, 2018, Berkely filed his Motion to Dismiss, asking that the Amended Complaint be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, or in the alternative, require Sutton to provide a more definite statement, pursuant to Rule 12(e).  ECF No. 6.  On December 2, 2024, Sutton filed a Response to Berkley's Motion to Dismiss ("Response"), arguing that the Amended Complaint contains detailed allegations, and no basis exists for a motion for more definite statement.  ECF No. 10, at Sec. III.  On December 9, 2024, Berkley filed a Reply.  ECF No. 11.

# LAW AND ANALYSIS

## I.     The Legal Standard for Dismissal Pursuant to Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  Berkley's motion to dismiss under Rule 12(b)(6) applies in this proceeding pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure.  In deciding a Rule 12(b)(6) motion to dismiss, "the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint 'contains enough facts to state a claim to relief that is plausible on its face.'"  *United States v. Ford Motor Co.*, 532 F.3d 496, 502 (6th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007).  This standard established in *Twombly* is now comprehensively recognized as the "plausibility" standard.  The United States Supreme Court concisely explained the "plausibility" standard in *Ashcroft v. Iqbal*:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" . . . .
>
> . . .
>
> Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

Operating in harmony with Rule 12(b)(6), Rule 8(2)(a) of the Federal Rules of Civil Procedure provides that a claim for relief must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Even though Rule 8(a)(2) does not require a complaint to set out detailed factual allegations, mere "conclusory allegations or legal

5

conclusions masquerading as factual allegations will not suffice." *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). Stated differently, "a legal conclusion couched as a factual allegation" need not be accepted as true. *Twombly*, 550 U.S. at 555. Rather, to survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Bishop*, 520 F.3d at 519. Simply put, a complaint must allege more than a "mere 'formulaic recitation' of the elements of a claim to withstand a Rule 12(b)(6) challenge." *Gumpher v. ECMC (In re Gumpher)*, No. 16-31183, 2017 Bankr. LEXIS 139, at *6 (Bankr. N.D. Ohio Jan. 17, 2017 (quoting *NM EU Corp. v. Deloitte & Touche LLP (In re NM Holdings Co.)*, 622 F.3d 613, 623 (6th Cir. 2010).

Additionally, Rule 9(b) of the Federal Rules of Civil Procedure states that when alleging fraud (as is the case here), a party must state "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Advocacy Org. For Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999) (factoring in Rule 9(b) in applying the plausibility standard in a case involving an allegation of fraudulent misrepresentation). As a practical matter, this is to ensure a defendant is given enough information to defend in a meaningful and informed manner. *See United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) ("In cases of fraud, Rule 9(b) has long played that screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later.").

Put together, the civil rules set a modest, but cogent, bar for a complaint raising § 523 matters. "At a minimum, the complaint must allege the time, place, and content of the alleged misrepresentation." *Harcourt v. Mallaley (In re Mallaley)*, No. 07-13346, 2008 Bankr. LEXIS

6

1098, at *2 (Bankr. S.D. Ohio 2008) (citing *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 (6th Cir. 2005)). In so doing, the Court "may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings. . . ." *Kuns Northcoast Sec. Ctr. LLC. v. Sharp (In re Sharp)*, No. 22-30854, 2024 Bankr. LEXIS 1293, at *5 (N.D. Ohio June 3, 2024) (citing 2 Moore's Federal Practice ¶ 12.34[2] (3d. ed).

Before examining the substance of the pleadings, the Court notes that Sutton represents himself as a pro se plaintiff, while counsel represents Berkley. The Court recognizes that pleadings filed by pro se litigants are to be "construed more liberally than pleadings drafted by lawyers." *Williams v. Browman*, 981 F.2d 901, 903 (6th Cir. 1992). While pro se litigants are afforded this less stringent standard, "a litigant's pro se status does not excuse him from reading the Federal Rules of Civil Procedure." *In re Heyl*, 609 B.R. 194, 202 (B.A.P. 8th Cir. 2019) (citing *McNeil v. United States*, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## II. The Debt Owed to Sutton

Before the Court can find that Sutton has plausibly stated any claims under § 523(a)(2)(A) for nondischargeability, there first must be a debt owed to him by Berkley. Sutton's Amended Complaint fails to allege any basis under which Berkley, in his individual capacity, would be liable to him for the debts claimed in the Amended Complaint. While the Amended Complaint alleges that "[Sutton] entered into a business agreement with Defendant, Thomas R. Berkley," (ECF No. 8), the evidence Sutton provided in his pleadings demonstrate that an agreement, such that one existed between the parties, was between Sutton and Berkely Marketing Inc., not Thomas Berkley. As previously stated, the Gmail eCheck receipts provided

7

by Sutton show transactions between Sutton and Berkley Marketing Inc. (ECF No. 1, Exs. A, B), and the accompanying Service Agreement demonstrates even less regarding a relationship between Sutton and Berkely in his individual capacity, as it named only one party: Berkley Marketing Inc. *Id*., Ex. C. While Thomas Berkely's signature appears on the Service Agreement, it does so on behalf of Berkley Marketing Inc. *Id*.

There were no claims in Sutton's Amended Complaint of piercing the corporate veil. Even if the Amended Complaint were to include a facial accusation of such, the pleadings lack substantive basis for such assertion.

"A corporation is a separate legal entity from its shareholders, even where there is but one shareholder." *LeRoux's Billyle Supper Club v. Ma*, 77 Ohio App.3d 417, 602 N.E.2d 685, 687 (Ohio App. 6th Dist. 1991). Under Ohio law there are circumstances that exist where courts will disregard the corporate form and hold an individual shareholder liable for corporate misdeeds, known as piercing the corporate veil. The corporate entity and the individual shareholder are then treated as a single entity and the corporate liabilities become the liabilities of the individual shareholder.

The corporate form may be pierced, and individual shareholders may be held liable for corporate misdeeds when:

> (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own; (2) control over the corporation by those to be held liable was exercised in such a manner to commit fraud or an illegal act against the person seeking to disregard the corporate entity; and (3) injury or unjust loss resulted from such control and wrong.

*Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Cos.*, 67 Ohio St. 3d 274, 1993 Ohio 119, 617 N.E.2d 1075, 1085 (Ohio 1993).

Again, there were no allegations in the Amended Complaint that establish a basis for piercing the corporate veil. Against this backdrop, the Court will continue its review of Sutton's Amended Complaint by applying the civil rules standards in conjunction with the § 532(a)(2)(A) elements.

**III.        11 U.S.C. § 523(a)(2)(A)**

11 U.S.C. § 727(b) affords a discharge to those debtors who file a petition for relief under Chapter 7, relieving those debtors of all debts incurred prior to the filing of a petition for bankruptcy, so long as those debts are not subject to certain exceptions listed in § 523 of the Bankruptcy Code.

Sutton's Complaint sets forth a series of allegations he believes are grounds for a finding that Berkley's debt to him is is nondischargeable under § 523(a)(2)(A) because the debt was incurred by fraud, false pretenses, or misrepresentation. The relevant portion of § 523 provides:

> (a) Discharge under [§ 727] does not discharge an individual debtor from any debt –
> (2) For money . . . to the extent obtained by . . .
>    (A) false pretenses, a fals representation, or actual fraud . . . ;

11 U.S.C. § 523(a).

Under § 523(a)(2)(A), "false representations and false pretenses encompass statements that falsely purport to depict current or past facts." *Baker v. Wentland* (*In re Wentland*), 410 B.R. 585, 594 (Bankr. N.D. Ohio 2009) (quoting *Peoples Sec. Fin. Co., Inc. v. Todd (In re Todd)*, 34 B.R. 633, 635 (Bankr. W.D. Ky. 1983)). "False pretenses are distinguishable from false representations in that 'a false pretense involves an implied misrepresentation or conduct that is intended to create and foster a false impression while a false representation involves an express representation.'" *Coughlin Chevrolet, Inc. v. Thompson* (*In re Thompson*), 458 B.R.

9

409, 421 (Bankr. S.D. Ohio 2011) (quoting *Goldberg Securities, Inc. v. Scarlata* (*In re Scarlata*), 127 B.R. 1004, 1009 (N.D. Ill. 1991)); *see also Wentland*, 410 B.R. at 594.

In addition to "false representation" and "false pretenses," the Supreme Court has held that § 523(a)(2)(A) also provides a cause of action for "actual fraud," or fraud that "[does] not require a misrepresentation from a debtor to a creditor." *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 361, 136 S.Ct. 1581, 1587 (2016); *see also (In re Vitanovich)*, 259 B.R. at 877. "Actual fraud" includes fraudulent transfers and "fraudulent conduct" that deals in "acts of concealment and hindrance." *Husky Int'l Elecs., Inc.*, 578 U.S. at 362. A finding of fraudulent intent may be made on the basis of circumstantial evidence or from the debtor's "course of conduct," given that direct, express proof of intent is rarely available. *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 724 (B.A.P. 6th Cir. 1999) (quoting *Hunter v. Sowers* (*In re Sowers*), 229 B.R. 151, 159 (Bankr. N.D. Ohio 1998)).

In order to except a debt from discharge under § 523(a)(2)(A), a plaintiff must prove the following elements by a preponderance of the evidence: (1) the debtor obtained money, property, services or credit through a material misrepresentation, either express or implied, that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) the creditor's reliance was the proximate cause of loss. *Rembert v. AT&T Universal Card Services (In re Rembert)*, 141 F.3d 277, 280–81 (6th Cir. 1998).

Construing the Amended Complaint in the light most favorable to Sutton, the Court cannot find that the Amended Complaint states a plausible claim for relief. Sutton's submissions are empty of any claimed misconduct or specific misrepresentation beyond general accusations such as: "[Berkley] knew or should have known that he did not intend to fulfill the

agreement. . . ." ECF No. 1 at ¶ 8.  Further, Sutton's Amended Complaint states that "[Berkley's] failure to deliver the third ATM machine and the full scope of services indicates a clear misrepresentation of intent to fulfil the agreement fully."  ECF No. 8. At ¶ 4.

These are the kind of "legal conclusion[s] couched as a factual allegation[s]" that the Federal Rules of Civil Procedure seek to quell.  *See, e.g.*, *In re Gumpher*, 2017 Bankr. LEXIS at *6 (granting a defendant's Rule 12(b)(6) motion in a § 523(a)(2)(A) case and citing *Rondingo, L.L.C. v. Township of Richmond*, 641, F.3d 673, 680 (6th Cir. 2011) and *Twombly*, 550 U.S. at 555).  Further, "[a] complaint which fails to identify the fraudulent statements or the reasons why they are fraudulent does not satisfy the particularity requirements of Rule 9(b)."  *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (quoting *Gupta v. Terra Nitrogen Corp.*, 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998).

In his Complaint and Supplement, Sutton himself concedes that Berkely Marketing Inc. delivered two of the three promised ATM machines.  ECF Nos. 1, 8.  This fact, taken as true, does not lead the Court to infer any cause of action beyond a breach of contract.  Sutton has not pled enough for the Court to make any further inference of fraud.  *See Iqbal*, 556 U.S. 662, at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but has not 'show[n]' – 'that the pleader is entitled to relief.'") (quoting Rule 8(a)(2)).  The fact that Berkley, in his individual capacity, failed to fulfill the obligations of the purported agreement between Sutton and Berkely Marketing Inc., and the fact that Sutton relied on the promises of the agreement, is not enough to except a debt from a bankruptcy discharge pursuant to § 523(a)(2)(A) under the standards set in the Federal Rules of Civil Procedure.  Therefore, Sutton does not advance a plausible § 523(a)(2)(A) claim.

The Court reiterates here that, even though this adversary proceeding is at the pleading stage, Sutton is held to a heightened pleading standard requiring him to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Sutton's Amended Complaint does not satisfy Rule 9(b)'s requirements on pleading fraud with particularity, nor does it meet the requirements of "the time, place and content" established by the *Walburn* court. 431 F.3d at 972. The minimal information in the Amended Complaint combined with the insufficient circumstantial evidence in the exhibits do not meet the well pleaded complaint standards set by the Federal Rules of Civil Procedure.

## CONCLUSION

For the foregoing reasons, Berkley's 12(b)(6) Motion to Dismiss is granted, and the Rule 12(e) motion is denied as moot.

IT IS SO ORDERED.